*663 OPINION OF THE COURT
Eve Preminger, J.
On September 7, 1973, defendant Fred Shapiro was arrested, for the first time, for possessing a container of orange juice with one dose of methadone in it. He plead guilty to attempted possession of one eighth of an ounce of methadone (aggregate weight) which, at that time, and for a brief period thereafter, constituted an E felony (Penal Law, § 220.06, subd 2). It is presently a B misdemeanor (Penal Law, §§ 110.00, 220.03). The issue before this court is whether that conviction may legitimately be used as a prior felony conviction pursuant to section 70.06 of the Penal Law.
In 1973 the Legislature restored, after a six-year absence, mandatory increased punishment for second felony offenders (L 1973, ch 277, § 9). Section 70.06, as then written, defined a prior felony conviction as a conviction "in this state of a felony, or in any other jurisdiction of an offense for which a sentence * * * of imprisonment in excess of one year * * * was authorized”. (Penal Law, § 70.06, subd 1, par [b], cl [i].) The constitutionality of this provision was immediately challenged as violative of the equal protection clause because, by its terms, the statute treated an out-of-State felony conviction as a predicate felony even where the foreign conviction was for an offense which would not have been a felony if committed in New York. The statute therefore treated citizens who had committed offenses out of State more harshly than those committing the identical offense in New York. (See United States ex rel. Mercogliano v County Ct. of Nassau County, 414 F Supp 508.) There followed a period of debate regarding the new statute’s constitutional validity (cf. People v Morton, 48 AD2d 58, and People v Mazzi, 78 Misc 2d 1014, with People v Wixson, 79 Misc 2d 557). In People v Parker (41 NY2d 21), the Court of Appeals resolved the issue in favor of the statute. The court stated that, in order to justify the difference in treatment, the Legislature need merely demonstrate a rational relationship to a legitimate State purpose, and found that rational relationship in the desirability of providing increased punishment for those who violate the norms of the community in which they commit a crime, regardless of whether those community norms differ from those of New York. As the court stated: "The Legislature, in enacting the challenged provision, exercised its considered judgment to provide that the seriousness of a crime should be determined *664 by the severity of the sentence and the norms prevailing in the jurisdiction in which a crime was committed.” (41 NY2d 21, 25, 26, supra.)
Nevertheless, the Legislature had already responded to criticism over the disparate treatment by amending section 70.06 to provide "a fairer and more logical approach”. (See Hechtman, 1975 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 70.06, 1978-1979 Pocket Part, p 74.) In 1975 it established that an out-of-State felony conviction may no longer be considered a prior felony conviction unless based upon an offense for which a felony sentence "is authorized in this state”. The relevant portion of the statute now reads:
"(b) For the purpose of determining whether a prior conviction is a predicate felony conviction the following criteria shall apply:
"(i) The conviction must have been in this state of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year * * * was authorized and is authorized in this state” (emphasis added).
The new legislation clearly intended to reject the concept behind the former statute. Instead of directing increased punishment toward those persons who had violated the felony norms of another State, such increased punishment was now limited to those who had flouted the existing norms of New York State, and only foreign offenses which were presently considered serious transgressions of the laws of this State could be considered predicate felonies.
Ironically, in attempting to rectify a perceived unfairness, the new statute can be read to create a new unjust classification different from the old disparate treatment only in that it now lacks any rational relationship to a legitimate State interest. While the new statute explicitly requires that any foreign conviction be based on an offense which is presently a felony in New York, it does not provide that a prior New York conviction must be similarly based on an offense which is presently a felony in New York. Thus a person who committed a prior offense in New York would be judged by the community norms of New York prevailing at the time of the offense, whereas a person committing the same offense in, for instance, New Jersey, would be judged by the current norms of New York. Additionally, if defendant had possessed the methadone in New Jersey instead of in New York, that *665 possession could not be considered a prior felony conviction. There is no rational basis for such a distinction.
It is not the case, here, as in Parker (supra, p 26) that "all persons who have been convicted, either in New York or another jurisdiction, of a crime for which a sentence in excess of one year may be imposed, are subject to second felony offender treatment and are treated equally” (emphasis added) because the person convicted in New York is treated more harshly than anyone else.
Nor is this a case of the Legislature punishing conduct based upon the norms of the jurisdiction in which the crime was committed; indeed, the opposite result has been effected. The Legislature has itself expressly stated its intent to punish possession of small amounts of methadone in this jurisdiction less severely, as a misdemeanor only. It is thus completely contrary to that intent to punish defendant more severely by denying him the benefit given to those whose prior conviction was obtained elsewhere merely because defendant’s prior conviction was obtained in New York. Like conduct demands like punishment in these circumstances.*
It is, of course, the duty of the court to adopt a construction of section 70.06 of the Penal Law which preserves its constitutionality. (See, e.g., People v Kaiser, 21 NY2d 86.) It follows from this rule that any application of the statute by the court must be consonant with the requirements of the due process clause.
Applying this analysis to the instant case, there is no rational basis for treating defendant Shapiro more harshly than someone with a similar out-of-State conviction. To do so denies defendant the equal protection of the laws as guaranteed by the Federal and State Constitutions (US Const, 14th Arndt; NY Const, arts I, II) as the distinction fails to "rationally [further] some legitimate, articulated state purpose” (McGinnis v Royster, 410 US 263, 270).
Aside from the constitutional infirmity involved in applying section 70.06 to any prior felony conviction based on conduct that is presently a misdemeanor, additional problems arise when dealing with a methadone conviction. The unusual legislative history of the classification of methadone offenses *666 raises grave doubts whether defendant’s conviction was ever legitimately classified as a felony or actually perceived as constituting a serious transgression of the norms of the community.
In 1973, when the initial version of the controversial Rockefeller drug laws was enacted, the Legislature classified methadone as a narcotic drug, thereby subjecting it to the aggregate weight provisions then existing for heroin, morphine and cocaine (NY Legis Doc, 1972, No. 10, p 67). Several months later, the method of dispensing methadone changed from tablet to liquid form (People v Carter, 80 Misc 2d 1081), which meant that one dose of methadone in a container of orange juice constituted felony possession (Penal Law, § 220.18), as opposed to over 400 doses for heroin, 300 doses for cocaine and 600 doses for LSD.
This bizarre situation brought an immediate outcry from all segments of the criminal justice community, and even united both sides of the bitter dispute over the rest of the provisions of the new drug laws (New York Times, Nov. 10, 1974, p 72, col 4). Everyone agreed that the methadone classification was "counterproductive”, "Draconian” and resulted in "patent inequity”. (Legis Bill Jackets, L 1975, chs 783, 785.) Accordingly, within a year of defendant Shapiro’s conviction, the Legislature changed the methadone classification to a "pure weight” standard and created the present offense structure (Penal Law, § 220.00, subd 7). The one court to rule on the validity of the original methadone classification held it unconstitutional because: "[The court] can conceive of no rational basis for a law which treats 30 milligrams of therapeutic methadone * * * to which a clinic employee has added an ounce or so of liquid, with the same degree of criminality and sanction as the same weight of more potent, illicit narcotics possessed or sold in dosage quantities at least one hundred times as great” (People v Carter, 80 Misc 2d 1081, 1088, supra).
Thus we see that the offense which the People seek to use against defendant as a prior felony conviction was declared a felony pursuant to a statute passed because of Legislative "lack of awareness” (People v Carter, supra, p 1087), quickly amended because of its irrational and unjust results, and declared unconstitutional as having no conceivable rational relationship to a legitimate State interest. All of these reasons apply with equal strength against reliance upon that *667 same statute as a predicate felony. This is not even an instance where conduct once deemed a serious transgression against our laws has been changed because of changed community standards. Here is conduct which was erroneously classified as a felony, and has been correctly reclassified as a misdemeanor. To now revive its felony status would be contrary to the expressed legislative intent, purpose and rationale and to basic principles of justice and fairness.
It should also be noted that defendant might well be entitled to be resentenced to a misdemeanor even though the ameliorative statute regarding resentencing of methadone convictions (Penal Law,. §60.08) does not explicitly refer to his situation. (People v Jennerson, 84 Misc 2d 56.)
For all of the foregoing reasons the court finds that defendant Fred Shapiro is not subject to a predicate felony conviction by reason of his 1974 methadone conviction.

 The court takes note of People v Klein (280 App Div 897, affd 305 NY 766) in which it was held that a felony must be treated in terms of its degree at the time of conviction. That case is not controlling here, as no equal protection problem was present in Klein.